[Civ. No. 1642. First Appellate District.—March 28, 1916.]

## W. D. THOMAS, Appellant, v. EARL C. ANTHONY, etc., Respondent.

CONTRACT—SALE OF MOTOR CARS—RETENTION OF DEPOSIT AS DAMAGES—RECOVERY OF—EVIDENCE—DUTY OF SELLER.—Where a contract for the sale of motor cars provided that in case of the cancellation of the contract before its expiration, or in the event that its terms should not be fully complied with by the purchaser, the deposit should be retained by the seller as damages, it is the duty of the seller in an action by the purchaser to recover such deposit, on the theory of a rescission of the contract by mutual consent, to show that he has been actually damaged in the sum deposited, or that one of the other contingencies mentioned in the contract had arisen upon which he was entitled to retain the deposit.

ID.—PRESUMPTION AGAINST VALIDITY OF LIQUIDATED DAMAGES—EXCEPTION TO BE PLEADED AND PROVEN.—In order to entitle a defendant to retain the sum deposited with him as contingent liquidated damages for the breach of an obligation, it is incumbent upon him to show not only by averment, but also by proof, that his case is within the exception contained in section 1671 of the Civil Code, for without an allegation bringing his case within the exception the pleading in that regard is insufficient, the presumption being, in the absence of such allegation, that such agreement is void.

ID.—RESCISSION OF CONTRACTS—POWER OF AGENTS.—Presumptively an agent is employed to make contracts, and not to modify or rescind them; to acquire interests, not to give them up, and no power to vary or cancel an agreement is to be inferred from a general power to make it, nor has the agent any implied power to waive or give up rights or interests of his principal, unless the principal knew or approved of such modifications by the agent. However, a general agent may act under such broad power to contract in his own name,

or to make terms or to settle upon his own discretion, as to overcome this presumption, and bind the principal by the modification, rescission, or release of the agent.

ID.—CHANGE OF SALE PRICE—RESERVED RIGHT—EFFECT OF.—An agency contract providing for the purchase of fifty motor cars between specified dates covering a period of almost one year, is not void by reason of the reservation therein of the right to change the list and net prices of such cars at any time by giving the purchaser two weeks' notice of such proposed change, where the purchaser's brokerage or discount is not altered by such change.

ID.—CANCELLATION OF CONTRACT—RESERVED RIGHT OF SELLER—EFFECT OF.—Such a contract is not void for lack of mutuality by reason of the provision therein reserving to the seller the right to cancel the contract upon fifteen days' notice and returning unused deposits.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Adolphus E. Graupner, Judge.

The facts are stated in the opinion of the court.

Edwin H. Williams, for Appellant.

James P. Sweeney, and George F. Snyder, for Respondent.

KERRIGAN, J.—This is an action brought to recover from the defendant one thousand dollars deposited with him by the plaintiff in conformity with the terms of a written agreement entered into between them.

When plaintiff's case was concluded defendant moved for a nonsuit, which was granted, and judgment was rendered and entered thereon. The appeal is from such judgment.

The testimony introduced shows that the plaintiff entered into a contract in writing with the Western Motor Car Company, the trade name under which the defendant Anthony did business. The contract was a lengthy instrument, providing substantially that Thomas should purchase from the defendant fifty Saxon motor cars between the date of the agreement, February 20, 1914, and January 1, 1915. The cars were to be sold to him at "San Francisco list prices," and a brokerage or discount of forty dollars on each car so sold was allowed to him off of said list price. The defendant reserved the right "to change the list and net prices of these cars at any time by giving the plaintiff at least two weeks'

notice of the proposed change.'' The latter agreed to open an establishment for the sale of the cars at Fresno, keep a demonstrator for exhibition purposes, and resell the cars to such customers as he could secure under the conditions named in the contract. He also deposited with the defendant one thousand dollars, which, in case of cancellation of the contract before its expiration, or in the event that its terms should not be fully complied with by the plaintiff, was to be retained by the defendant as damages, or to be applied by him to the liquidation of accounts that might then be due to him under the contract. The right was reserved by defendant of ''canceling the above contract upon fifteen days' notice and returning unused deposits.''

At the trial the plaintiff testified as follows: ''After the contract was executed and I had paid this thousand dollars I had a conversation with Mr. Sells, the manager of the Western Motor Car Company. That was about March 3d. Mr. Sells told me I had better go down to Fresno and open up an office and take orders for the cars. I asked him how he wanted me to handle the cars. I said, 'You promised me a demonstrator the first of the month.' I informed him that under the conditions I could not handle the car on a paying basis, and I asked him if he would release me if I got another job. He said, 'Most certainly.' So I went away and came back next morning, and told him I had another job and asked him for my deposit, and he said, 'Mr. Thomas, it will have to come from the Los Angeles office, and it will be the end of the week before I can give it to you.' And he asked me to come back and get it then. I did come back then and several times later, and he kept putting me off. I had a conversation with Mr. Sells when Mr. Cheney was present. Mr. Cheney asked him how long it would be before I got my money, and he stated the end of the week. Mr. Cheney wanted to know if it would help matters if we paid the expenses of wiring to Los Angeles, and he said, 'No, it would not,' and that he would have to write. He said, 'You know we have a signed contract with Mr. Thomas and can hold him to it if we want to, but we don't intend to do it. Without a doubt he will have his money at the end of the week.' ''

When the plaintiff rested his case, besides the contract he had introduced evidence, which, according to his view, entitled him to the return of the one thousand dollars deposit

upon the theory that there had been an oral mutual abandonment or rescission of the written contract. Whether or not that position is sound need not now be determined, but it is certain that there was no evidence before the court from which it could infer that the defendant was actually damaged in the sum of one thousand dollars, or that any of the other contingencies mentioned in the contract had arisen upon which the defendant was entitled to keep the whole deposit.

As before stated, the contract enumerates, in case of a cancellation or breach thereof by the plaintiff, various situations under which the defendant might be entitled to damages, and specifies in each instance of what the damage shall consist. Hence when the plaintiff had concluded his case—and assuming that his evidence showed that he had himself breached the contract, still at that point in the trial he was entitled to the return of the one thousand dollars unless the defendant should show any damage which he was entitled to recoup out of the deposit, or was entitled to the whole deposit, upon the showing made by plaintiff, by virtue of any of the provisions of the contract authorizing the defendant to retain it as liquidated damages.

Under the terms of sections 1670 and 1671 of the Civil Code, a provision in a contract fixing in advance the damage for a breach thereof is void, except when from the nature of the case it would be impracticable or extremely difficult to determine the actual damage.

It is clear that plaintiff's case disclosed nothing that brought it within the purview of the second of these two sections. Assuming that the plaintiff's evidence showed a breach of the contract, this alone would not warrant the granting of a nonsuit and the denial of all relief. In order to entitle a defendant to retain a sum deposited with him as contingent liquidated damages for the breach of an obligation. it is incumbent upon him to show not only by averment, but also by proof, that his case is within the exception contained in section 1671; for without an allegation bringing his case within the exception the pleading in that regard is insufficient, the presumption being, in the absence of such allegation, that such agreement is void. (*Long Beach etc. Dist.* v. *Dodge,* 135 Cal. 401, 405, [67 Pac. 499] ; *Patent Brick Co.* v. *Moore,* 75 Cal. 205, [16 Pac. 890] ; *Pacific Factor Co.* v. *Adler,* 90 Cal. 110, 120, [25 Am. St. Rep. 102, 27 Pac. 36].) "If a suit be brought

on the contract for the actual and not the liquidated damages, as a matter of defense defendant must show to the court that it is erroneously instituted. It must be shown to the court by proper pleadings and competent proof that the contract falls within" the law permitting liquidated damages. "This does not depend entirely upon the contract itself. Facts must be pleaded and proven from which the court can say as a matter of law that the contract for liquidated damages is valid because 'from the nature of the case it would be impracticable or extremely difficult to fix the actual damages.' The mere stipulations of the contract are insufficient for that purpose." (*Deuninck* v. *West Gallatin Irr. Co.,* 28 Mont. 261, [72 Pac. 618].)

While the judgment must be reversed for the error of the court in granting the defendant's motion for nonsuit, it is proper to notice several other contentions of the appellant.

The nonsuit seems to have been granted upon the ground that the claimed oral, mutual rescission, being of and concerning a written contract, was not proven as required by the provisions of section 1698 of the Civil Code, which reads: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." The appellant, however, contends that the rescission, being agreed to by the parties to the contract, constituted a mutual oral agreement of substitution for the written contract, and hence is not a modification thereof within the meaning of the section just quoted (*Pearsall* v. *Henry,* 153 Cal. 314, [95 Pac. 154, 159, 35 Cyc. 128] ; *Credit Clearance Bureau* v. *Hochbann Contracting Co.,* 25 Cal. App. 546, [144 Pac. 315, 20 Cyc. 219, 74 Am. Dec. 658 (note)] ; 1 Greenleaf on Evidence, sec. 303). As the evidence may be substantially different upon a retrial of the cause we do not deem it necessary to determine the legal question thus presented. Moreover, assuming that the law is as stated by the plaintiff, we still very much doubt whether he proved a rescission by agreement; for, in plaintiff's evidence, there seems to be an intimation that while the agent of the defendant, E. N. Sells, had authority to enter into a contract, he was not vested with the power of consenting to its cancellation or rescission. In addition to this inference from the evidence, the presumption under the authorities seems to be, in the absence of a showing to the contrary, that an agent empowered to make contracts is not authorized to re-

scind or modify them.  ''Presumptively an agent is employed to make contracts, not to rescind or modify them; to acquire interests, not to give them up, and no power to cancel or vary an agreement is to be inferred from a general power to make it, nor has the agent any implied power to waive or give up rights or interests for his principal . . . unless the principal knew or approved of such modifications by the agent.  However, a general agent may act under such broad power to contract in his own name, or to make terms or to settle upon his own discretion, as to overcome this presumption and bind the principal by the modification, rescission or release of his agent.'' (31 Cyc. 1387.)

As we have seen, the contract reserved to the defendant the right to change the price of the cars at any time by giving to the plaintiff at least two weeks' notice of the proposed change, it being the duty of the plaintiff to sell at the list price.  His brokerage or discount, however, was not altered by this change in the list.

We do not think that the contract by reason of this provision is void for failure to state the price at which the cars were to be sold.  The costs of transportation or of the manufacture of an automobile are doubtless subject to variation as conditions change; and as the plaintiff and all other subagents were to be treated alike, and the sale covered a period of nearly a year, we think this provision of the contract a reasonable one.  If it were not reasonable, and allowed the defendant to arbitrarily change the list price, the validity of the contract would be doubtful.

The contract also reserved to the defendant the right to cancel it upon fifteen days' notice, unused deposits to be thereupon returned.  We do not think, as urged by the appellant, that this provision of the contract makes it void for lack of mutuality.  In Page on Contracts, section 306, the author in treating of this phase of the law, says: ''If A and B make mutual promises to each other, and A is to have the right at his election to withdraw from the contract and relieve himself from all liability thereunder at his pleasure, some courts hold that such contract is without consideration. . . . If, however, A must give notice for a substantial period of time before ending his liability under the contract, and such liability is to last until the end of time for which the notice is given, A's promise is a consideration.  Thus if A has the right to

end the contract at the end of any year, or on ten days' notice, or on two weeks' notice, A's promise is a consideration."

For the error of the court in granting the defendant's motion for nonsuit the judgment must be reversed; and it is so ordered.

Lennon, P. J., and Richards, J., concurred.